In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00018-CV


______________________________







IN THE MATTER OF J.R.C.






 


On Appeal from the 323rd Judicial District Court


 Tarrant County, Texas


Trial Court No. 323-81358J-05




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 J.R.C., a juvenile, had previously been found to have engaged in delinquent
conduct--indecency with a child by contact--and had been placed on probation. Later, the trial
court found that J.R.C. had violated the terms of his probation, but the court declined to revoke his
probation, instead placing him in the custody of the Brookhaven Youth Ranch with directions to
successfully complete the residential placement. Approximately four months after being placed at
Brookhaven, J.R.C. was discharged from that facility amid reports that he had not progressed in his
anger and impulse control and had exhibited behavioral problems at the on-campus school there. 
Ultimately, on the State's motion to modify disposition, J.R.C. was sent to the Texas Youth
Commission (TYC) for an indeterminate commitment.

 Appealing that modification, J.R.C. contends only that the trial court abused its discretion
by committing him to the TYC rather than Tarrant County's Specialized Treatment for Offenders
Program (STOP). (1) We affirm the disposition by the trial court.

 J.R.C. asserts that STOP was an available option; that there was no showing that public
safety was better served by sending him to the TYC instead; that there was no showing that the TYC
could better rehabilitate him than STOP; and that there was a showing that his mother could more
easily participate if he were sent to STOP. J.R.C. also cites evidence that his first counselor at
Brookhaven discontinued her services, resulting in J.R.C.'s "discharge" because of scheduling
problems, (2) and that, before J.R.C. was sent to Brookhaven, a second counselor, Parnell Ryan, had
strongly recommended outpatient treatment for J.R.C. J.R.C. adds that there was evidence that his
time at Brookhaven was marked by a number of assaults on him by fellow students and that fellow
students urinated or vomited on items belonging to him. J.R.C.'s family members all testified that
they wanted him to go to the local STOP program and that committing him to the TYC would make
things only worse. J.R.C. argues that the trial court had inadequate evidence to justify sending him
to the TYC rather than using one of the other options.

 The State responds by suggesting that it had no duty to show that the TYC commitment was
superior to STOP and that we should not in any fashion consider whether the trial court failed to
exhaust other alternatives to a TYC placement. The State would have us focus solely on whether
the court abused its discretion by removing J.R.C. from the home. In other words, the State takes
the position that we cannot review the nature of the placement (after removal), but only whether the
court had evidence to justify removing J.R.C. Under the State's formulation, we would look at only
whether the State met the three-pronged test used to determine whether a court is authorized to
remove a juvenile from his or her home. See Tex. Fam. Code Ann. § 54.05(m)(1)(A), (B), and (C)
(Vernon Supp. 2006). (3) The ultimate conclusion of the State's position is that trial courts can, without
considering any alternatives, automatically choose to place all juvenile defendants into the TYC, so
long as they have been properly removed from their homes. We disagree.

 The statutes do not require commitment to the TYC for every probation violation; but they
suggest that such placement is for serious offenders. In re J.P., 136 S.W.3d 629, 632 (Tex. 2004). 
The TYC is the most severe form of incarceration in the juvenile justice system, and it is neither
reasonable nor appropriate in the area of juvenile law to use the final, most restrictive form of
detention in all situations. Id. at 634 (Schneider, J., concurring).

 Trial courts have discretion in this context, unlike regular criminal convictions, to select the
appropriate form of detention for juvenile offenders, and should exercise that discretion based on
the facts of each case. When a trial court exercises discretion, appellate courts have the authority,
and the duty, to review its action. Schroeder v. Brandon, 141 Tex. 319, 172 S.W.2d 488, 491
(1943); Word v. United States Coffee & Tea Co., 324 S.W.2d 258, 262 (Tex. Civ. App.--Amarillo
1959, writ ref'd n.r.e.); Smith's Heirs v. Hirsch, 197 S.W. 754, 765 (Tex. Civ. App.--Beaumont
1917, writ ref'd).

 The State argues that In re K.K.D., No. 03-03-00772-CV, 2004 Tex. App. LEXIS 7166 (Tex.
App.--Austin Aug. 12, 2004, pet. ref'd) (mem. op.), provides the proper standard of review. In that
case, the Austin court of appeals recognized that the Texas Family Code does not require the State
to investigate every possible alternative to TYC commitment. See Tex. Fam. Code Ann.
§ 54.04(i)(1) (Vernon Supp. 2006). K.K.D. did not, however, hold that an argument about proper
placement could not be raised or that evidence as to proper placement was irrelevant to the issues
that were raised.

 In fact, K.K.D. held that, once a juvenile court has properly made the findings required by
Section 54.04(i)(1), to place a juvenile on probation outside his or her home or to commit the
juvenile to TYC, the court then has broad discretion to determine the suitable disposition of the
juvenile. See K.K.D., 2004 Tex. App. LEXIS 7166, at *5 (citing In re C.C., 13 S.W.3d 854, 859
(Tex. App.--Austin 2000, no pet.)). The statutorily required findings are stated in the following
way:

 (i) If the court places the child on probation outside the child's home or
commits the child to the Texas Youth Commission, the court:

 

 (1) shall include in its order its determination that:

 

 (A) it is in the child's best interests to be placed outside the

 child's home;

 

 (B) reasonable efforts were made to prevent or eliminate
the need for the child's removal from the home and to make it
possible for the child to return to the child's home; and

 

 (C) the child, in the child's home, cannot be provided the
quality of care and level of support and supervision that the child
needs to meet the conditions of probation . . . .

Tex. Fam. Code Ann. § 54.04 (i)(1). In this case, those findings were explicitly made in the order
of commitment and have not been challenged on appeal. Thus, the trial court had broad discretion
in choosing the disposition for J.R.C. See C.C., 13 S.W.3d at 859.

 The State also directs our attention to In re G.L.C.P., No. 02-06-00293-CV, 2007 Tex. App.
LEXIS 3621 (Tex. App.--Fort Worth May 10, 2007, no pet.), and In re J.L.C., No. 2-06-00252-CV, 
2007 Tex. App. LEXIS 3063, at *9 (Tex. App.--Fort Worth Apr. 19, 2007, no pet.). In G.L.C.P.,
the Fort Worth appellate court addressed a similar argument while determining whether commitment
to the TYC was an available disposition. That court determined that the TYC was an available
disposition and, after noting that the record showed that prior efforts to keep G.L.C.P. at home had
failed, concluded that it was in his best interest to be placed outside the home and that the trial court
had not abused its discretion by committing him to the TYC.

 In J.L.C., the Fort Worth court refused to conclude that the trial court abused its discretion
by finding that commitment was a more appropriate disposition in the absence of any testimony to
show why the "Family Preservation" aspect of Tarrant County Juvenile Services would be a viable
option. J.L.C., 2007 Tex. App. LEXIS 3063, at *9.

 The San Antonio court of appeals was faced with a case having a different posture, in In re
S.G., No. 04-04-00475-CV, 2005 Tex. App. LEXIS 2560, at *5 (Tex. App.--San Antonio Apr. 6,
2005, no pet.). In that modification case, the State's witness admitted (and the trial court found) that
many local remedies had been exhausted and suggested it was time for the State, rather than the
county, to begin paying for S.G.'s upkeep. The trial court modified the disposition from probation
and committed her to the TYC. The appellate court found that the stated reason to send the juvenile
to the TYC--making the State pay to care for S.G.--did not conform to the stated goals of the
juvenile justice code and, thus, the trial court had no proper reason to commit S.G. to the TYC. Id. (4) 
 The El Paso court of appeals also addressed a similar issue in a modification case in In re
E.R.L., 109 S.W.3d 123 (Tex. App.--El Paso 2003, no pet.). The court considered itself "informed"
by the required findings set out in Section 54.04(i), and then looked to see if there was evidence to
support the decision of the trial court to place the juvenile in a program that was not the least
restrictive available. The appellate court ultimately concluded that there was evidence supporting
the trial court's decision to send E.R.L. to the TYC, even though other options were available.

 Neither the State's premise nor its conclusion are supported by the cited cases. The State's
comment that it did not have a duty to show that a TYC commitment was a superior result is correct. 
But that premise does not lead to the conclusion that evidence of the nature or existence of
alternatives to TYC commitment is irrelevant, or that such a determination is effectively
nonreviewable on appeal. None of the cases cited by the State explicitly takes the position argued
by the State in this appeal, and we reject the proposition that the choice of disposition of a juvenile
may never be reviewed by an appellate court--that only the decision to commit may be reviewed.

 Modifying a juvenile's probation is a decision which is within the sound discretion of the trial
court; such a decision can be reversed only on a finding that the trial court abused that discretion.
Tex. Fam. Code Ann. § 54.05 (Vernon Supp. 2006); In re J.P., 136 S.W.3d 629, 632 (Tex. 2004);
In re M.A., 198 S.W.3d 388, 390-91 (Tex. App.--Texarkana 2006, no pet.). A trial court abuses
its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or
principles. M.A., 198 S.W.3d at 391. A trial court does not abuse its discretion if some evidence
supports the decision. J.L.C., 2007 Tex. App. LEXIS 3063, at *9; see Furr's Supermarkets, Inc. v.
Bethune, 53 S.W.3d 375, 379 (Tex. 2001); see also Estrello v. Elboar, 965 S.W.2d 754, 758 (Tex.
App.--Fort Worth 1998, no pet.); Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.--Houston [1st
Dist.] 1993, writ denied). In other words, whether there is factually sufficient evidence to support
the trial court's findings is a relevant consideration in determining whether the trial court abused its
discretion. In re C.J.H., 79 S.W.3d 698, 702 (Tex. App.--Fort Worth 2002, no pet.); see Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Tex. Dep't of Health v. Buckner, 950 S.W.2d
216, 218 (Tex. App.--Fort Worth 1997, no writ).

 We must review the sole appellate issue in light of the discretionary authority of the trial
court. A trial court is not required to exhaust all possible alternatives before sending a juvenile to
the TYC. M.A., 198 S.W.3d at 391. The Texas Family Code permits a trial court to decline third
and fourth chances to a juvenile who has abused a second chance. J.P., 136 S.W.3d at 633. 

 This record contains some evidence about the nature of the STOP program, and some
evidence about its potential usefulness in rehabilitating J.R.C. There was also evidence, however,
that J.R.C. had failed to complete one type of local program successfully, and the managers of that
program indicated that he had not altered his behavior. There was evidence that J.R.C. was on the
receiving end of the hostility of other students at Brookhaven because he provoked them. There is
nothing shown by this record that would require the trial court to commit J.R.C. to STOP rather than
to the TYC. The evidence was thus not such as to require us to conclude that the trial court abused
its discretion by deciding to commit J.R.C. to the TYC. 

 We affirm the judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 2, 2007

Date Decided: October 11, 2007
1. STOP provides a residential environment option for certain male juveniles who have been
adjudicated for sexual conduct and have been ordered to participate in residential treatment before
they return home.
2. The document involved--as the witness explained--incorrectly stated that his counseling
with Debra Moore had ended unsuccessfully, rather than simply noting that there was a change in
counselor. 
3. As support for its argument, the State analogizes to the procedure followed in adult
convictions. It argues that appellate courts would not review whether a defendant was sentenced to
a particular type of imprisonment, or in a particular type of facility. Thus, the State posits, the
particular disposition made in a juvenile case should not be reviewable.
4. See  In  re  L.D., No. 12-06-00193-CV,  2007  Tex.  App.  LEXIS  1714  (Tex. App.--Tyler
Mar. 2, 2007, no pet.). In that appeal, the monetary problem was also raised, but the trial court had
made explicit findings that the child was a danger to the public, and it was apparent that the court
had considered the progressive sanction guidelines found in Sections 59.005-59.015 of the Texas
Family Code, and decided that deviating from those guidelines and committing L.D. to the TYC was
appropriate. Thus, the appellate court concluded that the trial court did not abuse its discretion by
so deciding.



71 S.W.3d
at 873; Latham, 20 S.W.3d at 69; Davis, 905 S.W.2d at 664–65. 
            For the reasons stated, we overrule Haskett's second point of error and affirm the trial court's
judgment.
 

                                                                        Jack Carter
                                                                        Justice

Date Submitted:          June 15, 2004
Date Decided:             June 16, 2004

Do Not Publish